UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUTH SMITH,<br>on behalf of Plaintiff and all others<br>similarly situated, | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LIBERTY MUTUAL<br>INSURANCE COMPANY and<br>JOHN DOES 1-10, | )<br>)<br>) |
| | ) |
| Defendants. | ) |

## COMPLAINT  – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

## INTRODUCTION

1.     Plaintiff, Ruth Smith, brings this action against Defendants, Liberty Mutual

Insurance Company ("Liberty Mutual") and John Does 1-10, to stop Defendants' practice of

making phone calls to cellular telephones using an automated telephone dialing system, in

violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain

redress for all persons injured by its conduct.

## JURISDICTION AND VENUE

2.     This Court has federal question subject matter jurisdiction under 28 U.S.C.

§§ 1337 (commerce) and 1331, as the action arises under the Telephone Consumer Protection

Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct.

740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

3.     The Court has personal jurisdiction over Defendant, Liberty Mutual Insurance Company,

and venue is proper in this District because Defendant is located in this District.

1

## PARTIES

4.      Plaintiff, Ruth Smith, is an individual who resides in Fairfax County, Virginia.

5.      Defendant, Liberty Mutual, is an insurance corporation organized under the laws of the Commonwealth of Massachusetts.  Liberty Mutual's principal office is located at 175 Berkeley Street, Boston, Massachusetts 02116.

6.      Defendants, John Does 1-10, are other persons responsible for the calls complained of herein.

## THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227

7.      Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

8.      Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243 (Dec. 20, 1991); see also *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.      Consumer complaints about this conduct have only increased since then.  "If robocalls were a disease, they would be an epidemic."  Rage Against Robocalls, Consumer Reports (July 28, 2015).  "Robocalls" are the #1 consumer complaint in America today.

10.      The Federal Trade Commission (FTC) and Federal Communications Commission (FCC) regularly cite "unwanted and illegal robocalls" as their number-one complaint category. The FTC received more than 1.9 million complaints filed in the first five months of 2017 and about 5.3 million in 2016.  The FCC has stated that it gets more than 200,000 complaints about

2

unwanted telemarketing calls each year.  These complaints are on top of the complaints each

state AG's office receives and also does not include the millions of unreported calls.

11.    In an effort to curb these unwanted to calls, the TCPA regulates, inter alia, the use

of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls to any

cellular telephone number.  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits

the use of autodialers to make any call to a wireless number in the absence of an emergency or

the prior express consent of the called party.

12.    In 2012, the FCC prohibited "any telephone call that includes or introduced an

advertisement or constitutes telemarketing, using an automatic telephone dialing systems or an

artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the

prior express written consent of the called party[.]" 47 C.F.R § 64.1200(a)(2). This prior express

written consent requirement became effective on October 16, 2013.

## FACTS

13.    Plaintiff, Ruth Smith, is a non-subscriber customary user of the cellular

telephone number XXX-XXX-9650.

14.    Plaintiff's, Smith, cell phone number is a residential number, used primarily

for nonbusiness purposes.

15.    Defendant, Liberty Mutual, contracts with third party aggregators to increase

the volume of its customers.

16.    Defendant, Liberty Mutual, contracts with third party aggregators to use

telephone solicitation to increase the volume of its customers.

17.    Upon information and belief, Defendant, Liberty Mutual, on its own and/or through

contracts with third party aggregators operates a call center where automated equipment is used to

place large numbers of telemarketing calls.  The equipment has the present capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

18.     Defendant, Liberty Mutual, is responsible for ensuring that its third party aggregators' telephone solicitation activities are compliant with the Telephone Consumer Protection Act.

19.     On April 22, 2020, Plaintiff received an automated call from (310) 526-8127. Plaintiff answered the call and said "hello" several times without a response.  After a pause, Plaintiff heard a "click", and then was connected to a live person who requested information about the condition of Plaintiff's vehicle from Vehicle Insurance Services who offered an auto insurance plan.  Plaintiff said she was not interested and ended the call.

20.     On April 24, 2020, Plaintiff received an automated call from (310) 526-8127. Plaintiff answered the call and said "hello" several times without response. After a pause, she heard a "click", and then was connected to a live person who identified himself as "Billy" from Vehicle Insurance Services offering an auto insurance plan.  "Billy" asked Plaintiff questions about the condition of Plaintiff's vehicle and if she had any vehicle accidents or tickets.  Plaintiff was then transferred to another live person (female) who repeated the questions "Billy" asked and then asked for her VIN number.  Plaintiff was uncomfortable sharing this information and requested  to communicate by email.

21.     This sequence of events, including "dead air", distinct pauses and/or clicks, are characteristic of an automatic telephone dialing system.

22.     Plaintiff provided the female caller on April 24, 2020 with her email address.

23.     Plaintiff thereafter received an email from Defendant, Liberty Mutual, which invites her to "unlock your auto insurance savings" and obtain a quote for auto insurance from Liberty Mutual.

24.     Plaintiff did not consent to the receipt of any calls from Defendants.

25.     Plaintiff did not provide her cell phone number to Defendants.

26.     Plaintiff may have received other unsolicited, automated or prerecorded telemarketing calls placed by or on behalf of Defendant, Liberty Mutual.

27.     Discovery may reveal additional unsolicited, automated telemarketing calls or prerecorded and/or artificial voice calls to Plaintiff's cell phone placed by or on behalf of Defendants.

28.     By calling Plaintiff, Defendant and/or its third party aggregators caused Plaintiff and the putative class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, consumption of electricity in cost per-kilowatt required to recharge the cell phones, consumption of gifted purchased blocks of calls, and wear and tear on telephone equipment. The calls took time to receive and Plaintiff's statutory right of privacy was invaded.

29.     The FCC has also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 (¶165) (2003).

30.     The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case.

31.    The calls were made to consumers who never requested to receive them, never engaged in any interaction with Defendants and are made on a repeat basis without consent.

32.    Defendant and/or its third party aggregators either negligently or willfully violated the rights of Plaintiff and other recipients in placing the calls.

33.    Defendant, Liberty Mutual, directed the requirements for its third party aggregators to generate prospective customers for it.

34.    Defendant, Liberty Mutual, ratified its third party aggregators' actions by accepting the benefits of its activities through accepting leads or prospective customers generated through its illegal telephone solicitation activities.

## COUNT I – TELEPHONE CONSUMER PROTECTION ACT ("TCPA")

35.    Plaintiff incorporate by reference paragraphs 1-34.

36.    The TCPA provides as follows at 47 U.S.C. § 227(b):

"§ 227. Restrictions on use of telephone equipment

... (b) Restrictions on use of automated telephone equipment

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; …."

37.    The TCPA, 47 U.S.C. §227(b)(3) further provides:

"Private right of action. A person or entity may, if otherwise permitted by the laws or rules of the court of a State, bring in an appropriate court of that State-

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the Court finds that the defendant willfully or knowingly, violated this subsection or the regulations prescribed under this subsection, the court may in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of the paragraph"

38.    Defendant and/or its third party aggregators violated the TCPA when they made unsolicited automated calls to cellular telephone numbers belonging to Plaintiff and other members of the class without their prior express consent.

39.    By making unsolicited calls to Plaintiff and the class members, using an automated dialing system and without prior express consent, Defendant and/or its third party aggregators violated 47 U.S.C. §227(b)(1)(A)(iii).

40.    Plaintiff and each class member are entitled to statutory damages.

41.    Plaintiff and the putative class members suffered actual damages in the form of consumption of gifted purchased blocks of calls paid to receive the unsolicited, automated robocalls and an invasion of their statutory rights of privacy.

## CLASS ALLEGATIONS

42.    Plaintiff brings this claim pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and 23(b)(3) on behalf of a class.

43.    The class consists of: (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) received calls from Defendant or its third party

aggregators on behalf of Defendant, on their cell phones, (d) placed using an automated dialer or a pre-recorded or artificial voice.

44.     The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Upon information and belief, based on the fact that Defendant and its third party aggregators maintain a call center, Defendant and its third party aggregators have made automated telephone calls to more than 40 persons who fall into the definition of the class. Class members can be identified through Defendant or its third party aggregators' records.

45.     Plaintiff reserves the right to modify the class definition as the counters and parameters of the class become apparent through discovery in this matter.

46.     Plaintiff's claims are typical of the claims of other members of the class, in that Plaintiff and the class members sustained damages arising out of Defendant's and/or its third party aggregators' uniform wrongful conduct, including the making of unsolicited telephone calls.

47.     Plaintiff will fairly and adequately represent and protect the interests of the class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

48.     There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. These include:

> a.     Whether the equipment Defendant and/or its third party aggregators used to place the calls in question was an automatic telephone dialing system as defined by the TCPA;

b.     Whether Defendant and/or its third party aggregators systematically made automated calls to persons without prior express consent to receive such telephone calls;

c.     Whether class members are entitled to treble damages based on the willfulness of Defendants' conduct.

49.    Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

a.   Statutory damages, 47 U.S.C. § 227(b)(3);

b.   An injunction restraining the conduct complained of;

c.   Costs of suit;

d.   Such other or further relief as the Court deems proper.

Respectfully Submitted,


*/s/ Christopher Lefebvre*
Christopher M. Lefebvre


Christopher M. Lefebvre , BBO #629056
THE CONSUMER AND FAMILY LAW CENTER OF
CLAUDE F. LEFEBVRE,  CHRISTOPHER M. LEFEBVRE, P.C.
PO Box 479, Pawtucket, RI 02862
Tel: (401) 728-6060
Fax: (401) 728-6534
chris@lefebvrelaw.com


Cathleen M. Combs*
Heather Kolbus*
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com


*Pro Hac Vice forthcoming*

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.

*/s/ Christopher Lefebvre*
Christopher M. Lefebvre

Christopher M. Lefebvre , BBO #629056
THE CONSUMER AND FAMILY LAW CENTER OF
CLAUDE F. LEFEBVRE,  CHRISTOPHER M. LEFEBVRE, P.C.
PO Box 479, Pawtucket, RI 02862
Tel: (401) 728-6060
Fax: (401) 728-6534
chris@lefebvrelaw.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.


*/s/ Christopher Lefebvre*
Christopher M. Lefebvre


Christopher M. Lefebvre , BBO #629056
THE CONSUMER AND FAMILY LAW CENTER OF
CLAUDE F. LEFEBVRE,  CHRISTOPHER M. LEFEBVRE, P.C.
PO Box 479, Pawtucket, RI 02862
Tel: (401) 728-6060
Fax: (401) 728-6534
chris@lefebvrelaw.com