UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUTH SMITH, on her own behalf and others           *
similarly situated,                                *
                                                   *
                Plaintiff,                          *
                                                   *
        v.                                          *        Civil Action No. 1:20-cv-11583-ADB
                                                   *
LIBERTY MUTUAL INSURANCE                           *
COMPANY and JOHN DOES 1–10,                        *
                                                   *
                Defendants.                         *

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

        In this putative class action, Ruth Smith ("Plaintiff") alleges that Liberty Mutual

Insurance Company ("Liberty Mutual") and John Does 1–10 (collectively, "Defendants") made

phone calls to cellular telephones using an automated telephone dialing system, in violation of

the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). [ECF No. 9 ("Am.

Compl.")].  Currently before the Court is Liberty Mutual's motion to dismiss Plaintiff's amended

complaint, [ECF No. 10], Plaintiff's motion to strike portions of Liberty Mutual's reply brief,

[ECF No. 19], and Plaintiff's motion for leave to file a second amended complaint, [ECF No.

22].  For the reasons set forth below, Liberty Mutual's motion to dismiss, [ECF No. 10], is

<u>GRANTED</u> without prejudice, Plaintiff's motion to strike, [ECF No. 19], is <u>DENIED</u>, and

Plaintiff's motion for leave to file a second amended complaint, [ECF No. 22], is <u>DENIED</u> as

moot.

# I.     BACKGROUND

## A.     Factual Background

The following facts are taken from the amended complaint, [Am. Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Plaintiff is an individual who resides in Fairfax County, Virginia.  [Am. Compl. ¶ 4]. Plaintiff uses a residential cell phone number, ending in -9650, primarily for non-business purposes.  [Id. ¶¶ 13–14].  Liberty Mutual, incorporated and with its principal place of business in Massachusetts, is an insurance corporation.  [Id. ¶ 5].  John Does 1–10 are other persons responsible for making calls that allegedly violated the TCPA.  [Id. ¶ 6].

Liberty Mutual contracts with third-party "aggregators" to make telephone calls to increase its number of customers.  [Am. Compl. ¶¶ 15–16].  Liberty Mutual's third-party aggregators make screening calls to determine a consumer's insurability.  [Id. at ¶ 21].  Because Liberty Mutual exclusively issues its own insurance, any business generated by the third-party aggregators goes directly to Liberty Mutual and not to any intermediaries.  [Id. ¶ 19].  Liberty Mutual accepts the business generated by its third-party aggregators.  [Id. at ¶ 21].

Liberty Mutual, either on its own or through its third-party aggregators, operates a call center that uses equipment to place large numbers of telemarketing calls.  [Am. Compl. ¶ 17]. The call center equipment uses a random or sequential number generator to store, produce, and dial telephone numbers, which allows for a large volume of calls to be made.  [Id.].  Liberty Mutual is responsible for ensuring that the telephone solicitation activities of its third-party aggregators comply with the TCPA.  [Id. ¶ 18].  Liberty Mutual is "generally aware" of the telemarketing methods used by its third-party aggregators to generate business and does not

object to those methods.  [Id. ¶ 20].  These methods include the use of automated equipment or pre-recorded or artificial voices to make telemarking calls on behalf of Liberty Mutual.  [Id.].

On April 22, 2020, Plaintiff answered an automated call from the number (310) 525-8127.  [Am. Compl. ¶ 22].  After answering, Plaintiff said "hello" several times with no response.  [Id.].  Plaintiff then heard a "click" and a live person from "Vehicle Insurance Services" requested information about Plaintiff's vehicle and offered an auto insurance plan. [Id.].  Plaintiff said she was not interested and ended the call.  [Id.].  Two days later, the same number called Plaintiff again.  [Id. ¶ 23].  Plaintiff again answered the call, said "hello" several times before hearing a "click," and was then connected to a live person who identified himself as "Billy."  [Id.].  Billy said he was from "Vehicle Insurance Services" and asked questions about the condition of Plaintiff's vehicle.  [Id.].  Plaintiff was then transferred to another live person who asked the same questions that Billy had and also asked for Plaintiff's vehicle identification number.  [Id.].  Plaintiff declined to share the requested information over the phone, asked to communicate via e-mail, and gave the caller her email address.  [Id. ¶¶ 23, 25].  Within thirty minutes after the second phone call, Plaintiff received an email from Liberty Mutual about obtaining a quote for auto insurance from Liberty Mutual.  [Id. ¶ 26].  The email included a link that redirected the email recipient to "www.libertymutual.com" and Liberty Mutual's logo.  [Id.].

Plaintiff did not provide her cell phone number to Defendants or consent to receiving any calls from the Defendants.  [Am. Compl. ¶¶ 27–28].  According to Plaintiff, the two calls she received included characteristics indicative of an automated telephone dialing system, including the pauses and clicks and the dead air after answering.  [Id. ¶ 24].

### B.   Procedural Background

Plaintiff filed her complaint on August 24, 2020, [ECF No. 1], and then filed an amended complaint on September 17, 2020, [Am. Compl.].  On September 30, 2020, Liberty Mutual moved to dismiss the amended complaint, [ECF No. 10], which Plaintiff opposed, [ECF No. 15]. Liberty Mutual filed an unopposed motion for leave to file a reply brief, [ECF No. 16], which the Court granted, [ECF No. 17].  The reply brief was filed on October 23, 2020.  [ECF No. 18].  On November 10, 2020, Plaintiff filed a motion to strike portions of Liberty Mutual's reply, [ECF No. 19], which Liberty Mutual opposed, [ECF No. 21].

Plaintiff's one-count amended complaint claims that Liberty Mutual and/or its third-party aggregators violated the TCPA by making unsolicited, automated calls to cellular telephone numbers without the prior express consent of Plaintiff and other members of the putative class. [Am. Compl. ¶ 41].  Plaintiff's proposed class consists of

> (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) received calls from Defendant or its third party aggregators on behalf of Defendant, on their cell phones, (d) placed using an automated dialer or a pre-recorded or artificial voice.

[Id. ¶ 46].  Plaintiff, on behalf of herself and putative class members, seeks statutory damages, injunctive relief, litigation costs, and any other relief the Court deems proper.  [Id. ¶ 52].

On April 15, 2021, Plaintiff filed a motion for leave to file a second amended complaint, [ECF No. 22], to account for a recent U.S. Supreme Court ruling, Facebook, Inc. v. Duguid, 141 S.Ct. 1163 (2021), and to add allegations regarding "Do Not Call" violations on behalf of Plaintiff and a putative class.  [ECF No. 22 ¶¶ 6–9].

## II.   LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all

reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.     DISCUSSION

Liberty Mutual moves to dismiss the amended complaint because Plaintiff has failed to allege facts sufficient to support the inference that Liberty Mutual is vicariously liable for the

actions of the callers who contacted Plaintiff, either through an agency relationship where

Liberty Mutual controlled the callers or through ratification of the callers' conduct.  [ECF Nos.

10, 18].  Plaintiff argues that she has alleged enough facts at this stage to survive a motion to

dismiss.  [ECF No. 15].

### A.      Motion to Strike

As a preliminary matter, Plaintiff argues that the Court cannot consider arguments raised

in Section II of Liberty Mutual's reply in support of its motion to dismiss.  [ECF Nos. 19, 20].

Specifically, Plaintiff contends that because Liberty Mutual's opening brief did not claim that

Plaintiff failed to adequately plead a ratification theory of vicarious liability, that argument is

waived.  [ECF No. 19 ¶ 3].  Liberty Mutual counters that Section II of its reply brief is

permissible because it responds to arguments raised in Plaintiff's opposition.  [ECF No. 21 at 1].

"The purpose of a reply memorandum is not to file new arguments that could have been

raised in a supporting memorandum."  Noonan v. Wonderland Greyhound Park Realty LLC, 723

F. Supp. 2d 298, 349 (D. Mass. 2010).  Therefore, when "a moving party raises an argument for

the first time in a reply brief, that argument is waived."  Napert v. Gov't Emps. Ins. Co., No. 13-

cv-10530, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013).  A party may, however, "use a

reply brief to clarify arguments previously made or to respond to an argument an opposing party

raises in an opposition."  Allied Home Mortg. Cap. Corp. v. Mark, No. 12-cv-10158, 2014 WL

4964728, at *12 (D. Mass. Sept. 30, 2014); see also Napert, 2013 WL 3989645, at *2 n.4

("Rather '[r]eply memorandums in support of dispositive motions are limited to rebuttal of

factual and legal arguments raised in the opposition.'") (quoting Noonan, 723 F. Supp. 2d at

349).

Liberty Mutual's reply brief properly responds to arguments raised by Plaintiff in her opposition.  In that opposition, Plaintiff argues that the amended complaint should not be dismissed because its "factual allegations are indicative of an agency relationship under a ratification theory" and cites cases in support.  [ECF No. 15 at 8–9].  Plaintiff contends that "Section II of defendant's reply does not address any of the cases cited in plaintiff's response on this issue and instead only asserts new arguments and cases that plaintiff has not had the opportunity to address."  [ECF No. 20 at 3].  The Court disagrees.  First, Section II of Liberty Mutual's reply brief responds directly to Plaintiff's ratification arguments rather than raising a new theory for the first time on reply.  See [ECF No. 18 at 3–6].  Second, Plaintiff cites no authority that holds that a reply brief is limited to referencing only the cases cited in the opposition.  Because Liberty Mutual does not raise a new argument on reply and its response to the argument raised in Plaintiff's opposition is permissible, Plaintiff's motion to strike is DENIED.

## B.    Vicarious Liability Under the TCPA[1]

"Congress passed the TCPA in 1991, prompted by voluminous consumer complaints about abuses of telephone technology."  Physician's Healthsource, Inc. v. Vertex Pharm. Inc., 247 F. Supp. 3d 138, 147 (D. Mass. 2017) (quotation marks and citation omitted).  In pertinent part, the TCPA provides that it is unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an

---

[1] A defendant can also be directly liable under the TCPA if the defendant itself places the unlawful telephone calls.  Defendant asserts that "[Liberty Mutual] is not alleged to have made the phone calls," [ECF No. 12 at 1], and Plaintiff does not brief a theory of direct liability in her opposition.  See [ECF No. 15].  Because the Court ultimately dismisses the amended complaint without prejudice and allows Plaintiff leave to amend, the Court declines to analyze whether Plaintiff has plausibly alleged that Liberty Mutual is directly liable under the TCPA.

artificial or prerecorded voice . . .to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call. . . .

47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private right of action to remedy violations

of those provisions and allows claims for actual damages or $500 in statutory damages per

violation.  Id. § 227(b)(3).

A defendant may be held liable for the TCPA violations of third parties under "a broad

range of agency principles, including not only formal agency, but also principles of apparent

authority and ratification."  Johansen v. Liberty Mut. Grp., Inc., No. 15-cv-12920-ADB, 2017

WL 6045419, at *2 (D. Mass. Dec. 6, 2017) (quoting In re Joint Petition filed by Dish Network,

LLC, 28 FCC Rcd. 6574, 6584 (May 9, 2013)).

The Federal Communications Commission ("FCC") analyzed vicarious liability under

§ 227(b)(1) and explained that:

> The classical definition of agency contemplates the fiduciary relationship that arises
> when one person (a "principal") manifests assent to another person (an "agent") that the
> agent shall act on the principal's behalf and subject to the principal's control.  Potential
> liability under general agency-related principles extends beyond classical agency,
> however.  A principal may be liable in circumstances where a third party has apparent (if
> not actual) authority.  Such apparent authority holds a principal accountable for the
> results of third-party beliefs about an actor's authority to act as an agent when the belief
> is reasonable and is traceable to a manifestation of the principal.  Other principles of
> agency law may support liability in particular cases.  For example, a seller may be liable
> for the acts of another under traditional agency principles if it ratifies those acts by
> knowingly accepting their benefits.  Such ratification may occur through conduct
> justifiable only on the assumption that the person consents to be bound by the act's legal
> consequences.

In re Dish Network, LLC, 28 F.C.C. Rcd. at 6586–87 (quotation marks, citations, and alterations

omitted); Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016) ("The Ninth Circuit deferred

to [the FCC ruling's in In re Dish Network, LLC] and we have no cause to question it.").

Vicarious liability under the TCPA is a fact-intensive inquiry that does "not require the

usual level of particularity" from the complaint.  Rosenberg v. LoanDepot.com LLC, 435 F.

Supp. 3d 308, 325 (D. Mass. 2020).  To state a claim that a defendant violated the TCPA based on a theory of vicarious liability, the plaintiff "must plausibly allege [only] that [a third party] was acting as an agent of [defendant], i.e. that [defendant] exercised control over, ratified or openly authorized [the third party's] actions."  Id.

1.   Liberty Mutual's Control Over the Callers

Liberty Mutual moves to dismiss the amended complaint because it does not allege enough facts to adequately plead a relationship between Liberty Mutual and the entities or individuals that called Plaintiff.  [ECF No. 10 at 2; ECF No. 12].  Specifically, Plaintiff does "not allege that Liberty exercised the kind of control over the callers that is necessary to state a vicarious liability theory of TCPA liability."  [ECF No. 10 at 2].  Plaintiff appears to contend that her factual allegations plausibly state an agency relationship because "[g]iven Liberty Mutual's business model, nobody would have an incentive to make such calls, and send such follow up emails unless they were retained by Liberty Mutual."  [ECF No. 15 at 7].

When analyzing vicarious liability under the TCPA, "[a] court may find a sufficient agency relationship where the principal exercised substantial control over the agent's actions." Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014).  To survive a motion to dismiss, a complaint alleging that a defendant had control over a third party's actions must put forth more than "[m]ere conclusory allegations" that a third party was defendant's agent or that defendant had the right to control a third party.  Melito v. Am. Eagle Outfitters, Inc., No. 14-cv-02440, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) (dismissing TCPA complaint); see also Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (dismissing TCPA complaint because it failed to contain "any allegations that [defendant] had the power to give 'interim instructions' to [the third party], or any non-conclusory suggestion of

9

'direction' or 'control' by [defendant] of [that third party]").  Factual allegations relevant to a defendant's control over a third party can include:

> how the caller identified itself (e.g., as defendant's employee), the substance of the call (e.g. a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control.

Aaronson v. CHW Grp., Inc., No. 18-cv-01533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019).

Plaintiff failed to plead sufficient facts to plausibly suggest that Liberty Mutual had any control over the unnamed entities or individuals who placed the offending calls to Plaintiff.  In relevant part, the amended complaint alleges that Liberty Mutual had contracts with third-party aggregators, that these third-party aggregators generate business for Liberty Mutual and make calls on behalf of Liberty Mutual using autodialer equipment, and that Liberty Mutual "directed the requirements for its third-party aggregators to generate prospective customers for it."  [Am. Compl. ¶¶ 15–17, 19–21, 29–30, 36].  Even accepting these conclusory factual allegations as true, the amended complaint never connects Liberty Mutual's "third-party aggregators" to the two calls placed to Plaintiff and never alleges that Liberty Mutual had control over or any other relationship with the callers who contacted Plaintiff.  Further, the amended complaint does not allege that Liberty Mutual directed the callers to place the calls to Plaintiff, that anyone on the calls said they were calling on behalf of Liberty Mutual, or that there is any relationship between Liberty Mutual and "Vehicle Insurance Services."  In sum, none of the factual allegations about the two phone calls "tend to demonstrate an agreement between the caller and defendant that the

caller would act on the principal's behalf and subject to the principal's control."[2] <u>Aaronson</u>, 2019 WL 8953349, at \*3.

This finding, however, does not end the analysis.  A classical agency relationship based on the principal's control of an agent is one theory of vicarious liability, but "[p]otential [TCPA] liability under general agency-related principles extends beyond classical agency."  <u>In re Dish Network, LLC</u>, 28 F.C.C. Rcd. at 6586; <u>see also</u> <u>Rosenberg</u>, 435 F. Supp. 3d at 325 (stating plaintiff "must plausibly allege that [a third party] was acting as an agent of [defendant], i.e. that [defendant] exercised control over, ratified or openly authorized [the third party's] actions.").  Accordingly, the Court next considers whether Plaintiff has sufficiently alleged that Liberty Mutual is vicariously liable under a ratification theory.[3]

---

[2] The allegations in the amended complaint here contrast with complaints in other cases that survived a motion to dismiss.  For example, in <u>Rosenberg</u>, 435 F. Supp. 3d at 325, the plaintiff alleged that the offending calls were placed by a telemarketer called Ascendent, that Loan Depot hired Ascendent, and that Loan Depot was identified on the offending calls.  <u>Id.</u>  These factual allegations, along with others, were sufficient to state a claim that Loan Depot was vicariously liable for the actions of the telemarketer.  <u>Id.</u>  Unlike <u>Rosenberg</u>, Plaintiff's amended complaint contains no allegations of a contract or any other relationship between Liberty Mutual and the callers, and therefore does not plausibly allege that Liberty Mutual exercised control over or directed the actions of the callers.

[3] A defendant may also be vicariously liable for TCPA violations under a theory of apparent authority.  <u>Johansen</u>, 2017 WL 6045419, at \*2.  "Apparent authority is the power held by an agent . . . to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  <u>McDermet v. DirecTV, LLC</u>, No. 19-cv-11322, 2021 WL 217336, at \*8 (D. Mass. Jan. 21, 2021) (quoting Restatement (Third) Of Agency § 2.03).  "Apparent authority can be created only by the *principal*'s manifestations to a third party, and is not established by only the purported agent's representations of authority to a third person."  <u>Id.</u> (quotations omitted) (emphasis in original).  To the extent Plaintiff relies on a theory of apparent authority, the Court finds that Plaintiff failed to plausibly allege that the callers acted with apparent authority because the amended complaint contains no factual allegations about statements or conduct by Liberty Mutual that suggest that Liberty Mutual authorized the callers' conduct.

2.      Liberty Mutual's Ratification of the Callers' Conduct

Plaintiff argues the motion to dismiss should be denied because her "factual allegations are indicative of an agency relationship under a ratification theory."  [ECF No. 15 at 8].  In its reply, Liberty Mutual counters that Plaintiff has failed to allege the elements of ratification. [ECF No. 18 at 3].

A defendant can be vicariously liable for the TCPA violations of a third party if the defendant ratifies the unlawful conduct.  See In re Dish Network, LLC, 28 FCC Rcd. at 6582. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."  McDermet, 2021 WL 217336, at *11 (quoting Restatement (Third) Of Agency § 4.01(1)).  "Ratification must be based upon full knowledge of all material facts, subject, however, to the qualification that there may be ratification when one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately."  Id. (quotations omitted); see also Bank v. Vivint Solar, Inc., No. 18-cv-02555, 2019 WL 2280731, at *5 (E.D.N.Y. Feb. 25, 2019), report and recommendation adopted, No. 18-cv-02555, 2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019) (rejecting ratification argument in part because amended complaint failed to allege defendant had any knowledge about the offending call).  "[K]nowing acceptance of the benefit[s] of a transaction ratifies the act of entering into the transaction."  Restatement (Third) Of Agency § 4.01 cmt d.

Despite contending otherwise, Plaintiff has failed to plausibly allege that Liberty Mutual ratified the actions of the callers that contacted Plaintiff because she does not allege that Liberty Mutual had any knowledge of the circumstances of the calls made to Plaintiff or "purposely shuts [its] eyes" to the circumstances surrounding the call.  The amended complaint states that thirty minutes after the second call, Plaintiff received an email from Liberty Mutual.  [Am.

Compl. ¶ 26].  There is no factual allegation in the amended complaint that the callers identified Liberty Mutual, indicated that Liberty Mutual was aware that call was taking place, or that Liberty Mutual was aware of or should have been aware of the methods used in making the calls to Plaintiff.  At most, the amended complaint alleges that "Liberty Mutual is generally aware of and has not objected to the telemarketing methods used by its third-party aggregators to generate business for it, including their use of automated equipment or pre-recorded or artificial voices to place telemarketing calls on its behalf."  [Id. ¶ 20].  Putting aside the lack of specific facts regarding Liberty Mutual's knowledge of its third-party aggregators' actions, as explained in Section III.B.1 supra, the amended complaint does not allege any facts to plausibly allow the inference that the "third-party aggregators" are responsible for the two calls to Plaintiff. Therefore, the allegations in the amended complaint do not state a plausible claim that Liberty Mutual is vicariously liable under a ratification theory.

The Court acknowledges that complaints alleging TCPA violations are not held to the usual levels of particularity and prior to discovery, much of the information regarding Liberty Mutual's relationships with third parties is solely within the control of Liberty Mutual.  This, however, cannot excuse Plaintiff's failure to allege any facts that connect Liberty Mutual and/or its "third party aggregators" with the conduct of the callers that contacted Plaintiff.  For this reason, the Court grants Liberty Mutual's motion to dismiss without prejudice and allows Plaintiff leave to file a second amended complaint within twenty-one days.

IV.     **CONCLUSION**

Accordingly, for the reasons stated above, Plaintiff's motion to strike, [ECF No. 19], is DENIED.  Liberty Mutual's motion to dismiss, [ECF No. 10], is GRANTED without prejudice. Plaintiff may file a second amended complaint within twenty-one days but is urged to consider

this ruling in determining if the claim can be re-pled to withstand a motion to dismiss.  Because the Court grants the motion to dismiss without prejudice and allows Plaintiff to file a second amended complaint, Plaintiff's motion for leave to file a second amended complaint, [ECF No. 22], is <u>DENIED</u> as moot.

**SO ORDERED.**

April 22, 2021                                                                    /s/ Allison D. Burroughs
                                                                                          ALLISON D. BURROUGHS
                                                                                          U.S. DISTRICT JUDGE